















KAJ    5/3/06    9:00
3:06-CV-00006   ROUSE V. CLARK LAW OFFICES
*19*
*OPPM.*

1  M. DAVID MEAGHER, ESQ. #171151
   LAW OFFICES OF M. DAVID MEAGHER
2  333 S. JUNIPER STREET, SUITE 217
   ESCONDIDO, CA 92025
3  (760) 743-2200

4  Attorneys for Plaintiff
   Martin D. Rouse, Jr.



FILED

MAY   1 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                      DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Martin D. Rouse, Jr., an individual, | CASE NO. 06 CV 006 LAB (RBB) |
| Plaintiff, | **PLAINTIFF MARTIN ROUSE, JR.'S POINTS AND AUTHORITIES IN OPPOSITION TO SLAPP MOTION OF DEFENDANTS RORY CLARK, THE LAW OFFICES OF RORY CLARK, AND JAN SHAPIRO** |
| v. | |
| LAW OFFICES OF RORY CLARK, RORY CLARK, an individual, JAN SHAPIRO, an individual, and WORLDWIDE ASSET PURCHASING, a Limited Liability Company, | HON:      LARRY A. BURNS<br>DATE:     MAY 22, 2006<br>TIME:     10:30 A.M.<br>DEPT.:    9 |
| Defendants. | |

---

PLAINTIFF MARTIN ROUSE, JR.'S POINTS AND AUTHORITIES IN OPPOSITION
TO SLAPP MOTION OF DEFENDANTS RORY CLARK, THE LAW OFFICES OF RORY CLARK,
AND JAN SHAPIRO

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 1

III. ARGUMENT AND AUTHORITY .................................................................... 7

## I.     The SLAPP STATUTE DOES NOT APPLY

"The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77.)  Plaintiff's complaint arises from improper collection activities, not defendant's claims against an unrelated third party.

## II.     California Civ.C. § 47(b) DOES NOT APPLY IN THIS MATTER

The California Supreme Court has ruled that <u>before litigation privilege, as set forth in C.C. Section 47(b) attaches, there are four elements which must be satisfied.</u>  These elements are, statements:

"(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; **(3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.**" *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.  Defendants admit that Plaintiff was never a party in their litigation against a third party, therefore, the Third and Fourth Elements are absent in this matter, and litigation privilege does not apply.

## III.     The Fair Debt Collection Practices Acts

The Federal Fair Debt Collection Act is located at 15 U.S.C. § 1692 et.seq., and The State Act, located at C.C. 1788 et.seq have the express purpose of preventing unfair, abusive, or deceptive practices by creditors seeking to collect money alleged to be owed from a consumer.  The Acts are a "strict liability" Act.   Defendants collection efforts against Plaintiff violated the various consumer protection statutes alleged.

i

IV.   CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

CASES

*American Airlines v. Remis Indus. Inc.,* , 494 F.2d at 197 .................................................... 20

*Baker v. Citibank et.al.* 13 F.Supp. 2d 1037 ............................................................. 19

*Baker v. G.C. Services Corp.* (9th Circ. 1982) 677 F.2d 775 ............................................. 8, 10 ,20

*Blackburn v. Brady* (2004) 1116 Cal.App.4th 670 .................................................... 12,13

*Blanchard v. Direct TV* (2004) Cal.App. 4th 903 .................................................... 16

*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 ........................................... 1,7, 8, 10, 11, 12

*ComputerXpress, Inc. v. Jackson,* 93 Cal.App.4th 993 ...................................... 10, 11, 12, 13, 16

*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53. ............................ 12, 14

*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 307 .......................... 9

*Kajima Engineering & Construction v. City of Los Angeles* (2002) 95 Cal.App.4th 921 .......12,13

*Lam v. Ngo* (2001) 91 Cal.App.4th 832 ................................................................... 14

*Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702 .............................................................. 18

*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 ............................... 11

*Matson v. Dvorak* (1995) 40 Cal.App.4th 539 ............................................................ 14

*Menges* v. *Robinson* (1933) 132 Cal.App. 647 ............................................................ 18

*Moore v. Shaw et al.* (2004) 116 Cal.App.4th 182 ...................................................... 10

*Navellier v. Sletten,* 29 Cal.4th 82 ......................................................................... 15

*Paul for Council v. Hanyecz, supra,* 85 Cal.App.4th at p. 1365 .......................................... 9

*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260 ....................................................... 14

*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394,        ........................ 14

*Rusheen v. Cohen* (2006) 37 Cal.4th 1048 .............................................................. 15

*Russell v. Equifax A.R.S.,* (2nd Circ. 1996) 74 F3d 30, 33. . .......................................... 8

*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798 .......................................... 15

*Shekhter v. Financial Indemnity Co.* ..................................................................... 9

*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 .......................................................... 7, 15, 17

iii

1  *Swanson v. Southern Credit SeAv., Inc.*, (9th Cir. 1988) 869 F.2d 1222 .......................... 19,20

2  *Wilbanks et al. v. Wolk*, (2004) 121 Cal.App.4th 883 ...................................................... 7, 14, 15

3  *Wilcox v. Superior Court (Peters)* (1994) 27 Cal.App.4th 809 ................................................ 14

4

5  **STATUTES**

6  15 U.S.C. 1692 ............................................................ 3, 8, 9, 10, 18, 19, 20, 22

7  C. C. 47(b) ............................................................... 1,2, 5, 7, 15, 16, 17, 22

8  C.C. 128.5 ..................................................................................................... 9

9  C.C. 1770 ................................................................................................. 3,21

10  C.C. 1788 ...................................................................... 3, 8, 19, 21 ,22

11  C.C.P. 425.16 .......................................................... 1, 7, 8, 9, 12 , 14, 15, 17

12  C.C.P. 674 ..................................................................................................... 18

13  C.C.P. 697.410 ............................................................................................... 22

14

15  OTHER AUTHORITIES

16  Black's Law Dictionary, 6th Edition (1990) ............................................................. 13

17

18

19

20

21

22

23

24

25

26

27

28

# I.
# INTRODUCTION

This action is a Fair Debt Collection Practices Act (FDCPA) case, brought against all defendants for their harassment, and improper attempts to collect money from the Plaintiff, Martin D. Rouse, Jr., (Mr. Rouse, Jr.).  It is undisputed that Mr. Rouse, Jr. did not owe any money to the defendants[1].

Defendant Law OFFICE's of Rory Clark, Rory Clark and Jan Shapiro ("CLARK) infer the sole allegation of violations of this FDCPA Complaint is the placing a lien on property owned by Mr. Rouse, Jr.  As the allegations of FDCPA complaint, the declarations and exhibits filed and served concurrently with this Opposition make clear, defendants committed multiple violations of both the Federal and State FDCPA's against Mr. Rouse, Jr., before and after they filed suit against a third party.  These violations include failure to give Notice of the right to verification of a debt; continuing to attempt collection after receiving a Demand by Plaintiff to cease, attempting to collect money from a person who does not owe any money, and placing a lien on Plaintiff's property.

The defendants in this action assert that they have a collection claim against a man named Dale Rouse (not out of disrespect, but to lessen confusion, Plaintiff will refer to Dale Rouse as Dale).  CLARK assumes that because they filed suit against Dale, any action against them is automatically subject to review as a SLAPP (C.C.P. Sec 425.16).  They are incorrect.

# II.
# FACTUAL BACKGROUND

Defendants assume that because they sued someone named Dale, that any action they take enjoys absolute immunity under Civil Code Section 47(b).  This too is incorrect.  As is acknowledged in their Motion and shown by the citations below, **litigation privilege only attaches where there is a "logical connection between the parties and the litigation.**

---

[1] The CLARK SLAPP Motion offers a recital of facts that Mr. Rouse, Jr., made no attempt to correct the identity mistake being made by CLARK, blaming Mr. Rouse, Jr.  As is shown by the Declarations of Mr. Rouse, Jr.,and Ms. Linneman, and Exhibit "1", this recital is contradicted by these Declarations and this Exhibit.

**PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO SLAPP MOTION OF DEFENDANTS RORY CLARK, THE LAW OFFICES OF RORY CLARK, AND JAN SHAPIRO**

1   As is shown below, neither the SLAPP statue, nor C.C. Section 47(b) attaches to the

2   actions of Martin D. Rouse, Jr.  That defendants may have a valid claim against Dale is

3   irrelevant.  Dale is not a party to this action.  Mr. Rouse, Jr., was not a party to, or intended to be

4   involved in any action between defendants and Dale.  Therefore, no litigation purpose is served

5   by collections acts aimed at Mr. Rouse, Jr., for a debt alleged to be owed by Dale.  There is no

6   "logical connection" between CLARK and Mr. Rouse, Jr., for litigation privilege to attach.

7   **Mr. Rouse, Jr.'s Efforts to Stop the Harassment by CLARK**

8   Beginning in or about February 2005, CLARK began to harass Mr. Rouse, Jr., and his

9   fiancee Jennifer Joan Linneman (Ms. Linneman) in an attempt to collect money not owed by Mr.

10   Rouse, Jr.  This harassment took the form of multiple telephone calls and letters addressed to

11   "Dale."  The calls were filled with accusations by the defendants that Plaintiff was in fact "Dale"

12   (see Declaration of Mr. Rouse, Jr.), and that Ms. Linneman was in fact "Lorraine Rouse."

13   In a good faith attempt to stop the collection harassment, on two separate occasions, Mr.

14   Rouse, Jr. went so far as to prove by his driver's license and on one occasion his social security

15   card, to CLARK and/or its agents that he was not "DALE."  Mr. Rouse, Jr., provided debt

16   collector Jan Shapiro a letter dated May 12, 2005, (a true and correct copy of this letter and the

17   copy of the driver's license and social security card are attached to the Notice of Lodgment

18   (NOL) as Exhibit "1" and is incorporated by reference). The first five (5) digits of the social

19   security card are redacted as a guard against identity theft.

20   That this letter and attachments were sent by Mr. Rouse, Jr. is attested to in his

21   Declaration.  The letter, and identification shows conclusively that he is not Dale.  Mr. Rouse, Jr.

22   advised debt collector Shapiro by telephone his fiancee, with whom he shares his home, suffers

23   from Multiple Sclerosis, and the stress of dealing with this unwarranted ongoing barrage of

24   telephone calls in an attempt to collect a debt not owed by him was severely aggravating her

25   condition, and causing him great emotional strain. (See Declaration of Mr. Rouse, Jr. (NOL 2).

26   Mr. Rouse, Jr.'s biological father has gone by the name Dale Rouse.  However, there is

27   no evidence before this Court that the Dale Rouse sued by CLARK is the biological father of Mr.

28   Rouse, Jr.  Even if the "Dale" sued by CLARK is the biological father of Mr. Rouse, Jr., this

1   does not provide CLARK with any logical connection or legal basis to collect against Plaintiff.

2   The FDCPA violations complained of occurred before defendants sued Dale. Prior to

3   filing this FDCPA suit, numerous attempts to stop these bill collectors from harassing Mr. Rouse,

4   Jr., and his fiancee were taken. Suit was filed only after these bill collectors placed a lien on Mr.

5   Rouse, Jr.'s property, and laughingly said to him "Well I guess we'll get our money now."

6   The Plaintiff's complaint arises out of illegal collection activity that began in January or

7   February of 2005, not defendants underlying litigation against some person named Dale. The

8   FDCPA complaint contains allegations of violations of both the Federal FDCPA (15 U.S.C.

9   1692), the attendant claims for emotional distress from violations of the Federal Act, as well

10  violations as the State of California FDCPA (C.C. 1788)(collectively the Acts) and Acts Unfair

11  to Consumers (C.C.1770).

12  The Plaintiff does not owe, nor has he ever owed money to the defendants (See

13  Declaration of Mr. Rouse, Jr.). Prior to this FDCPA complaint, Mr. Rouse, Jr., had never been

14  involved in any litigation activity with any defendant in this matter. Mr. Rouse, Jr., has lived at

15  this current address in Escondido, California for approximately 6 years. (See NOL 2)  The

16  alleged debtor of the defendants actually lived in Northern California, a fact known to defendants

17  as shown by NOL "3", defendants "Exhibit B" attached to the pleading in this unrelated case.

18  Some months after the harassment of Mr. Rouse, Jr. began, Defendant Clark, his law

19  firm, and Jan Shapiro (Collectively CLARK), on behalf of Worldwide Asset Purchasing, LLC

20  (WAP), filed a complaint against a person named Dale Rouse[2]. This complaint, Superior Court

21  Case Nr.: IN 044 098, named as the sole defendant, **DALE ROUSE.** The complaint alleges

22  aliases, none of which include the name Martin Rouse, Jr. A copy of the Summons and

23  Complaint is attached as NOL Exhibit 4, and is incorporated by reference.

24  Following numerous promises by CLARK to cease the harassment and the demand to

25  stop contained in NOL Exhibit "1", CLARK nonetheless sent process servers to Plaintiff's home

26

27  _____

28  [2]  There is no factual showing before this Court as to what gender "Dale" Rouse is, and Defendant's make
an unsupported inference that Martin Rouse, Jr., may be Dale. Beyond speculation of CLARK there is no offer of
proof to support this red herring by CLARK.

1   (See declaration of Mr. Rouse, Jr., and Ms. Linneman).  Two process servers confronted Mr.

2   Rouse, Jr., and Ms. Linneman, stating that they knew that he was "Dale Rouse" and she was

3   "Lorraine Rouse" (please see Declarations of Mr. Rouse, Jr., and Ms. Linneman).  As is attested

4   to by Ms. Linneman, she immediately reentered her home and brought out identification showing

5   her name to be Jennifer Joan Linneman.  Please see the declaration of Ms. Linneman at ¶ 11,

6   attached as NOL "5."  A copy of her driver's license is attached to her Declaration.

7          Although having demonstrated to both CLARK and to the process servers that Plaintiff

8   and Ms. Linneman were not Dale and Lorraine, the collection harassment continued, and  the

9   process servers repeatedly returned to the property, parking on a long private driveway, to

10  observe Mr. Rouse, Jr.'s home.  See Declarations of Plaintiff and Ms. Linneman.

11         Shortly thereafter, Mr. Rouse, Jr., returned from a weekend trip to find a copy of a

12  summons and complaint (NOL "4") naming a Dale as Defendant, in his mail box (Declaration of

13  Mr. Rouse, Jr. at ¶ 16).  As shown on NOL "4", the complaint is exclusively alleged against a

14  single party by the name of Dale with a variety of aliases.  The Plaintiff's name, Martin Rouse,

15  Jr., does not appear anywhere on NOL "4."

16         The CLARK harassment reached a zenith when some 3 months after Plaintiff had

17  demanded the collection activity stop, demonstrated by NOL "1"(Declaration of Mr. Rouse, Jr.),

18  CLARK filed an abstract of judgment against the property owned by Mr. Rouse, Jr.  Please see

19  NOL "6" a copy of the Abstract of Judgment placing a lien on the home address of Plaintiff.  The

20  abstract of judgment does not contain a judgment against, nor any reference to Mr. Rouse, Jr.  It

21  does state as "Last Known Address," Mr. Rouse, Jr.'s home address, thereby ensuring the County

22  Recorder would attach the lien to his property.

23         When Plaintiff discovered this outrage, he called and informed CLARK their improper

24  lien was preventing him from refinancing his mortgage causing actual economic harm.

25  Defendant SHAPIRO stated "well I guess we'll get our money now."  See Declaration of Martin

26  Rouse, Jr.  As of the date of this Opposition, there has been no Conformed Release of lien

27  received by Martin Rouse, Jr., or signed documents which would permit Plaintiff to present the

28  release to the County Recorder's Office.  See Declaration of Mr. Rouse, Jr.

**There is No Petition Related Activity**

The defendants SLAPP motion asserts that the Motion is predicated on this action arising out of "petition related" activity, the WAP law suit against Dale. As shown below, this law suit arises out of illegal collection activity against Mr. Rouse, Jr., that began months before any suit against Dale may have been filed. This FDCPA complaint does not arise from the petition activity aimed at Dale. The act of filing a lien by the defendants is not an act taken in furtherance of the right of petition. Filing a lien is merely a ministerial function of the County Recorder, and by itself is not subject to review as a SLAPP.

The defendants argue, based on their mistaken belief that this matter arises from their law suit against Dale, they enjoy absolute litigation privilege under California Civil Code Section 47(b). As is shown below, their interpretation of litigation privilege is not shared by the California State Supreme Court.

The defendants may have a judgment against a person named Dale. That it is irrelevant to this matter. Defendants may have numerous judgments, but an unrelated judgment does not convey an unfettered right to harass persons with no connection to their litigation with collection tactics that violate the Acts.

The Plaintiff in this matter is Mr. Rouse, Jr. Defendants admit in their moving papers that Mr. Rouse, Jr. was not an intended party in the action against Dale. Yet, in spite of this admission, Defendants continued to try and collect money from Mr. Rouse, Jr. After written Notice he did not owe the money. These acts on behalf of WAP were a despicable and ongoing attack on Mr. Rouse, Jr., to harass him into paying a debt that he dd not owe.

In an ironic twist, defendants blame Mr. Rouse, Jr., for their failure to abide by the FDCPA requirement to give written opportunity to challenge the validity of an alleged debt. The defendants assert that all Mr. Rouse, Jr., had to do was open a letter addressed to a third person, a federal offense, and to respond to the letter. As is shown by NOL "1" and attested to in the Declaration of Mr. Rouse, Jr., he informed CLARK in May of 2005, in writing, with a copy of his drivers license and social security card, that he was not Dale.

Contrary to the SLAPP motion claim that CLARK's harassment was Mr. Rouse, Jr.'s

1   fault, as is shown by the Declaration of the Plaintiff and Ms. Linneman, CLARK was repeatedly

2   advised by telephone and in writing that he was not Dale, and that he had no liability for any debt

3   owed by Dale.  Demonstrated by the exhibits offer by CLARK in their law suit against Dale

4   described below, CLARK knew that Dale lived in Bethel Island, CA.  NOL Exhibit "3" is a

5   certified copy of Defendants Sworn Declaration, attaching an invoice from Bank of America,

6   showing the debtor to be "Dale Rouse" who lived in Bethel Island, CA, their "Exhibit B."

7           This Fair Debt Collection Practices Act complaint arises from improper collection

8   activity, against an individual who owes no money to, and was not involved in any prior

9   litigation involving defendants.  This litigation therefore arises, from collection harassment,

10  before and after the ministerial act of filing a lien on property owned by the Plaintiff, and not

11  from the litigation between CLARK and Dale.

12          Plaintiff will argue the SLAPP motion is not proper as to **the 2nd and 3rd Causes of**

13  **Action,** as the statute does not apply because the defendants fail to demonstrate the acts sued on

14  arise from petition related activity.  A relationship to some prior litigation does not itself mean

15  that the complaint "arises" from litigation .

16          As to **the 5th and 6th Causes of Action,** the SLAPP statute does not apply as these causes

17  of action for emotional distress arise from violations of the Federal FDCPA and therefore are not

18  subject to review under the SLAPP statute.

19          The Plaintiff will also argue that if this Court determines that the SLAPP statute does

20  apply, and the burden of proof shifts to Plaintiff to demonstrate a probability of prevailing on the

21  merits, that the Declarations of Mr. Rouse, Jr., and Ms. Linneman, and the other Exhibits lodged

22  concurrently with this Opposition, satisfy the requirement of demonstrating a prima facie case of

23  a probability of Plaintiff prevailing, and therefore denying the SLAPP motion.

24          Throughout the Special Motion to Strike portions of the Plaintiff's Complaint as a

25  SLAPP, defendants offer sarcastic commentary.  They comment on "making a federal case" out

26  of violations of the Federal Fair Debt Collection Practices Act.  Inexplicably, they blame Mr.

27  Rouse, Jr., for not opening letters that were addressed to someone named Dale.  And finally, they

28  blame the San Diego County Recorders office for attaching a lien to the property address that

1   CLARK provided them.  The house that public records show belongs to Mr. Rouse, Jr., not Dale.

2       This case is about repeated and egregious violations of the Fair Debt Collection Practices

3   Act, strict liability statutes, and the emotional distress caused by collectors who knew that Mr.

4   Rouse, Jr., had no liability for the alleged debts of a person named Dale, but who kept trying to

5   collect anyway.

6       Should this Court determines the SLAPP statute applies, the standard of proof required to

7   demonstrate a prima facie case, permitting this matter to go forward is that of the Acts.  The Acts

8   are strict liability statutes which hold a debt collectors liable for violations, without regard to

9   intent.  The evidence educed in Opposition demonstrates the FDCPA violations, and the

10  emotional distress caused by these collection tactics, satisfy the Plaintiff's burden of proof.

11  Therefore, this Motion must be denied.

12  **III.**<br>**ARGUMENT AND AUTHORITY**

13

14  **I.      The SLAPP STATUTE DOES NOT APPLY**

15      "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action
     which arguably was filed in retaliation for the exercise of speech or petition rights falls under
16  section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.'" (*City of
     Cotati v. Cashman* (2002) 29 Cal.4th 69, 77.)
17

18  **II.     California Civ.C. § 47(b) DOES NOT APPLY IN THIS MATTER**

19      The California Supreme Court has ruled that <u>before litigation privilege, as set forth in
     C.C. Section 47(b) attaches, there are four elements which must be satisfied.</u>  These
20  elements are, statements: "(1) made in judicial or quasi-judicial proceedings; (2) by
     litigants or other participants authorized by law; **(3) to achieve the objects of the**
21  **litigation; and (4) that have some connection or logical relation to the action.**"
     *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.
22

23      "Civil Code section 47, which creates statutory privileges for specified publications or
     broadcasts, provides some protection from SLAPP suits. Not all communications or
24  conduct leading to SLAPP suits are privileged . . ." *Wilbanks et al. v. Wolk*, (2004) 121
     Cal.App.4th 883.
25

26  **III.    The Fair Debt Collection Practices Acts**

27  **The Fair Debt Collection Practices Act, as applied by Federal and State law are Strict**

28  **Liability Acts.**

1    The Federal Fair Debt Collection Act is located at 15 U.S.C. § 1692 et.seq.  The purpose

2  of this Act is to prevent unfair, abusive, or deceptive practices by creditors seeking to collect

3  money alleged to be owed from a consumer.  The Act is a "strict liability" Act.  "Liability is

4  found regardless of the intent of the collector, their lack of knowledge as to the improper act, or

5  whether the act of the collector is willful in nature." *Russell v. Equifax A.R.S.*, (2nd Circ. 1996) 74

6  F3d 30, 33.  Also see *Baker v. G.C. Services Corp.* (9th Circ. 1982) 677 F.2d 775.

7    The State Act, located at C.C. 1788 et.seq. mirrors the Federal Act in its intent to prevent

8  unethical, or abusive collection practices by bill collectors.

9  **1.    The Anti-SLAPP Statute does not apply.**

10    "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action
    which arguably was filed in retaliation for the exercise of speech or petition rights falls
11    under section 425.16, whether or not the claim is *based on* conduct in exercise of those
    rights.'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77.)
12

13    **The California Anti-SLAPP Statute C.C.P. Section 425.16**

14    Under section 425.16, a cause of action asserted "against a person arising from any act of

15  that person in furtherance of the person's right of petition or free speech under the United States or

16  California Constitution in connection with a public issue [is] subject to a special motion to strike,

17  unless the court determines that the plaintiff has established that there is a probability that the

18  plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

19  **PROCEDURAL ASPECTS OF A SLAPP MOTION**

20    A SLAPP analysis is a two-part review.  The initial burden of proof rests with the

21  Defendants (moving party) to demonstrate the challenged Cause(s) of Action "arise(s)" from one

22  of the four suspect prongs of the statute in subsections (e)(1) through (e)(4).  In the instant matter,

23  the Defendants make no such showing, they assert that filing suit against Dale is a sufficient

24  showing that the SLAPP statute applies.  This is incorrect.

25    Only upon a satisfactory showing that the statute applies, will the burden of proof shift to

26  the Plaintiff to prove by admissible evidence the probability of prevailing at trial. "In terms of the

27  so-called threshold issue, the moving defendant's burden is to show the challenged cause of action

28  'arises' from protected activity.  Once **[but only if] it is demonstrated the cause of action arises**

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO SLAPP MOTION OF  DEFENDANTS
RORY CLARK, THE LAW OFFICES OF RORY CLARK, AND JAN SHAPIRO

1   **from the exercise of the defendant's free expression or petition rights, then the burden shifts**

2   **to the plaintiff to show a probability of prevailing in the litigation."** (*Shekhter v. Financial*

3   *Indemnity Co.*, 89 Cal.App.4th at p. 151, original italics; see also *Fox Searchlight Pictures, Inc. v.*

4   *Paladino* (2001) 89 Cal.App.4th 294, 307 ["to invoke the protection of the SLAPP statute

5   [defendant must show] the challenged lawsuit arose from an act on the part of the defendant in

6   furtherance of her right of petition or free speech" (italics added)]; *Paul for Council v. Hanyecz,*

7   *supra,* 85 Cal.App.4th at p. 1365 ["defendant must present a prima facie showing that the

8   plaintiff's causes of action arise from acts of the defendant taken to further the defendant's rights

9   of free speech or petition in connection with a public issue" (italics added)].)

10         As is shown below, the SLAPP statute does not apply in this matter, and this Court should

11   award substantial attorneys fees to Plaintiff for Defendants having filed a frivolous SLAPP

12   motion. C.C.P. 425.16(c) provides in pertinent part: "In any action subject to subdivision

13   (b) . . . If the court finds that a special motion to strike is frivolous or is solely intended to

14   cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a

15   plaintiff prevailing on the motion, pursuant to [s]ection 128.5."

16         In this instance there is no basis for the SLAPP motions.  Two of the causes of action (2nd

17   and 3rd arise from FDCPA's consumer protection violations, not the WAP suit against Dale, and

18   the last two causes of action arise from Federal FDCPA claims (5th and 6th Cause of Action) and

19   are not subject to SLAPP analysis.  The defendants are represented by the same law firm, and their

20   motions are predicated on the same issues.  The Defendants have filed two separate motions,

21   thereby requiring significant extra work by Plaintiff to defeat these frivolous motions.

22         If the Court concludes the statute applies, Plaintiff demonstrates by admissible evidence

23   the probability of prevailing on the merits.  Therefore, this SLAPP motion must be denied.

24   **Defendants Fail to Show the SLAPP Statute Applies**

25         With respect to the 5th and 6th causes of action, for Intentional and Negligent Infliction of

26   Emotional Distress, these Causes of Action arise from the Federal FDCPA and are not subject to

27   SLAPP analysis.  Federal Fair Debt Collection Practices Act, 15 U.S.C. Section 1692k. Civil

28   liability incorporated into statute. "(a) Amount of damages: Except as otherwise provided by this

1  section, any debt collector who fails to comply with any provision of this subchapter with respect

2  to any person is liable to such person in an amount equal to the sum of . . .(1) any actual damage

3  sustained by such person as a result of such failure;"

4      In *Baker v. G.C. Services, Corp.* (9th. Circ 1982) 677 F.2d 775, the Court recognized that

5  claims for emotional distress are proper under the Federal FDCPA.  As such, because the 5th and

6  6th Causes of Action are grounded in the Federal Statute, the State SLAPP statute has no bearing

7  on these claims, and thus this Court should deny the SLAPP motion as to these causes of action.

8      *Baker* makes clear actual damages include emotional distress, whether pleaded as

9  intentional or negligent.  As such, the 5th and 6th causes of action are not subject to review under

10  the state SLAPP statute.  Because the defendants can demonstrate federal claims fall under a

11  SLAPP analysis, the motion as it applies to these causes of action must be denied.

12      With respect to the Motion of defendants in general, SLAPP analysis is still inappropriate.

13  "That a cause of action arguably may have been triggered by protected activity does not entail that

14  it is one arising from that activity." *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.  This rule

15  of law has been widely applied.  In *Moore v. Shaw et al.* (2004) 116 Cal.App.4th 182, the Court

16  concluded that a mere relationship to protected activity, was itself not SLAPP protected.

17      CLARK'S SLAPP Motion at page 3, lines 5-6 and at 10-11, admits that Mr. Rouse, Jr.

18  was never a part of the litigation against Dale, nor was he intended to be.  As such, this admission

19  recognizes that the FDCPA complaint arises from collection activity, not a suit defendants may

20  have maintained against Dale.  CLARK'S Motion at page 3, lines 24-26 acknowledge that Mr.

21  Rouse, Jr.s' FDCPA complaint does not allege there is an association between the Dale Rouse

22  judgment and the collection efforts of CLARK against Mr. Rouse, Jr.

23      These admissions by Defendant are fatal to their motion.  In *ComputerXpress, Inc. v.*

24  *Jackson*, 93 Cal.App.4th 993, the Court held, " 'the act underlying the plaintiff's cause' or 'the act

25  which forms the basis for the plaintiff's cause of action' must *itself* have been an act in

26  furtherance of the right of petition or free speech." (*Id.* at p. 1003.).  Defendants admit in their

27  Motion that this is not the case.  The basis for this FDCPA complaint is collection harassment.

28      Defendants make no attempt to demonstrate how the SLAPP statute applies to any cause

1  of action in this matter.  They note filing litigation is a constitutional right, potentially giving rise

2  to a SLAPP analysis.  However, no attempt to demonstrate how this FDCPA complaint arises

3  from their litigation against Dale is made.  The CLARK motion can be summed up as being "we

4  sued Dale, and because we sued Dale, it is SLAPP protected.  Because we sued Dale Plaintiff

5  can't demonstrate a probability of prevailing.  Because of litigation privilege in our suit against

6  Dale, we are protected from liability for our misconduct directed against anyone else.

7      **"it is the principal thrust or gravamen of the plaintiff's cause of action that**

8  **determines whether the anti-SLAPP statute applies, and when the allegations referring to**

9  **arguably protected activity are only incidental to a cause of action based essentially on**

10 **nonprotected activity, collateral allusions to protected activity should not subject the cause**

11 **of action to the anti-SLAPP statute."** (*Martinez v. Metabolife Internat., Inc.* (2003) 113

12 Cal.App.4th 181, 188.) .

13      The mere fact that the complaint may have some relationship to other litigation does not

14 by itself create a SLAPP analysis.  Please see *City of Cotati v. Cashman et al.* (2002) 29 Cal.4th

15 69, where Plaintiff filed suit in State Court that mirrored the Defendants action in Federal Court.

16 The State High Court concluded that although the "City's action arose from the underlying

17 controversy respecting the validity of City's ordinance rather than from Owners' federal lawsuit,

18 we further conclude that City's action was not subject to a special motion to strike under section

19 425.16." *City of Cotati* id.

20      "It is indisputably true, as the trial court observed, that City's action was filed shortly after

21 Owners filed their claim in federal court.  But **the mere fact an action was filed after protected**

22 **activity took place does not mean it arose from that activity**.  The anti-SLAPP statute cannot be

23 read to mean that "any claim asserted in an action which arguably was filed in retaliation for the

24 exercise of speech or petition rights falls under section 425.16, whether or not the claim is based

25 on conduct in exercise of those rights." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th

26 993, 1002, 113 Cal. Rptr. 2d 625.

27      "While City's complaint repeatedly refers to the underlying subject matter of Owners'

28 federal action (i.e., the mobilehome park rent stabilization ordinance and arguments respecting its

1   validity), it contains no reference to the action itself. California courts rightly have rejected the

2   notion "that a lawsuit is adequately shown to be one 'arising from' an act in furtherance of the

3   rights of petition or free speech as long as suit was brought after the defendant engaged in such an

4   act, whether or not the purported basis for the suit is that act itself." (*ComputerXpress, Inc. v.*

5   *Jackson, supra*, 93 Cal.App.4th at p. 1002.)" *City of Cotati* id.

6            In short, the statutory phrase "cause of action . . . arising from" means simply that the

7   defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance

8   of the right of petition or free speech. (See *ComputerXpress, Inc. v. Jackson, supra*, 93

9   Cal.App.4th at p. 1001, and cases cited.) In the anti-SLAPP context, the critical point is whether

10  the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of

11  petition or free speech. *Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53.

12           Here, as in *Cotati*, and in *Equilon*, the Plaintiff's FDCPA Complaint follows protected

13  activity, but does not "arise" from it. In the instant action, Plaintiff's action arises from conduct in

14  violation of the FDCPA. CLARK asserts that the lien is the basis for a SLAPP analysis. This is

15  incorrect. The violation of the FDCPA is the basis for this action, therefore, no cause of action in

16  Plaintiff's action "arises" from the suit against Dale, rather, these causes of action arise from

17  illegal collection activity that predated, and continued after the suit against Dale.

18           The placement of a lien is not itself a petition activity. No relief is sought by the placing

19  of the lien, this is just a collection device that is ministerial in nature. Ministerial acts are not

20  sufficient to provide for SLAPP review. *Blackburn v. Brady* (2004) 1116 Cal.App.4th 670, and

21  *Kajima Engineering & Construction v. City of Los Angeles* (2002) 95 Cal.App.4th 921. In both

22  instances, the cases are factually similar to matter.

23           In *Blackburn* the Court found the Sheriff's sale of a non-judicial repossession of real

24  property was ministerial in nature. Black's Law Dictionary, 6th Edition (1990) defines a

25  "Ministerial function" such as the sheriff conducting the sale in *Blackburn*, as "A function as to

26  which there is no occasion to use judgment or discretion." CLARK argues the County Recorder

27  erred by placing the lien on Mr. Rouse, Jr's. property. However, as NOL "6" shows, CLARK is

28  responsible because they gave this address to the Recorders Office on the Abstract of Judgment

1  against Dale, after receiving NOL "1." Here an abstract of judgment was presented to the County

2  Recorder, who must file the abstract. There is no discretion or authority by which the recorder

3  could have rejected the lien, even though the name on the Abstract was different than the recorded

4  owner of the property.

5         In *Kajima* a dispute arose in a cross-complaint. *Kajima* filed a SLAPP motion alleging

6  that the action arose from the fact that *Kajima* had filed the underlying suit, therefore this was

7  sufficient to warrant SLAPP review. The Court held that "This allegation does not relate solely to

8  the project for the Badger Avenue Bridge, let alone to Kajima's filing of the underlying complaint

9  in this action, and plainly is not the basis for liability asserted in any of the causes of action in the

10  City's amended cross-complaint. *ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p.

11  1001. The City therefore does not attack Kajima's right to petition the courts for redress of its

12  grievances."

13         CLARK misrepresents the basis for this Complaint in this matter. At page 6, lines 7-8,

14  CLARK asserts that the FDCPA violations arises from the prosecution of its litigation with Dale.

15  This is false, this FDCPA Complaint arises from abusive collection practices that occurred before

16  and after the litigation between WAP and Dale.

17         Mr. Rouse, Jr. does not attack defendants right to petition the courts for redress of its

18  grievances against Dale. This suit was filed because defendants continually tried to collect money

19  from Plaintiff, when it was known that Mr. Rouse, Jr., was not a debtor, nor involved in any

20  manner with the CLARK lawsuit against Dale. (Please declaration of Mr. Rouse, Jr.) Therefore,

21  this FDCPA suit arises out of collection misconduct by the defendants, not out of any one of the

22  protected prongs of the Anti-SLAPP statute.

23         Because the Defendants do not demonstrate that anyone of the four challenged causes of

24  action arises out of any one of the 4 prongs of the SLAPP statute, this Court should deny the

25  motion in its entirety.

26  **If the Statute Applies to Any Cause of Action, Plaintiff Demonstrates a Probability of**

27  **Prevailing**

28         Only upon a satisfactory showing that the statute does apply, the burden of proof shifts to

1  the Plaintiff to prove by admissible evidence that the complaint is legally sufficient.  Section

2  425.16 does not bar a plaintiff from litigating an action that arises out of the defendant's free

3  speech or petitioning.  It subjects to potential dismissal only those causes of action as to which the

4  plaintiff is unable to show a probability of prevailing on the merits (§ 425.16, subd. (b)), a

5  provision we have read as "requiring the court to determine only if the plaintiff has stated and

6  substantiated a legally sufficient claim" *Rosenthal v. Great Western Fin. Securities Corp.* (1996)

7  14 Cal.4th 394, 412 . Also see *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548; *Rosenaur v.*

8  *Scherer* (2001) 88 Cal.App.4th 260, 274.

9         In *Wilbanks et al. v. Wolk,* 121 Cal.App.4th 883, the Court held that **"Plaintiffs**

10  **adequately established a probability of prevailing on their claim against Wolk even if they**

11  **did not demonstrate the ability to recover every element of damages sought on that claim."**

12  A SLAPP motion is not a vehicle for testing the strength of a plaintiff's case, or the ability of a

13  plaintiff, so early in the proceedings, to produce evidence supporting each theory of damages

14  asserted in connection with the plaintiff's claims.  It is a vehicle for determining whether a

15  plaintiff, through a showing of minimal merit, has stated and substantiated a legally sufficient

16  claim. (*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 63; *Navellier v. Sletten*, 29

17  Cal.4th 82, 95.)

18         A motion to strike under section 425.16 is not a substitute for a demurrer or summary

19  judgment (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 851, fn. 12.).  In resisting a SLAPP motion,

20  the plaintiff need not produce evidence that he or she can recover on every possible point urged.

21  "It is enough that the plaintiff demonstrates that the suit is viable, so that the court should deny the

22  special motion to strike and allow the case to go forward." *Wilbanks, id.*

23         A plaintiff's burden under section 425.16 " 'is similar to the standard used in determining

24  motions for nonsuit, directed verdict, or summary judgment.' " The plaintiff is required to

25  demonstrate that the complaint is legally sufficient and supported by a sufficient prima facie

26  showing of facts to sustain a favorable judgment if the plaintiff's evidence is credited. (*Wilcox v.*

27  *Superior Court (Peters)* (1994) 27 Cal.App.4th 809).  The court considers the pleadings and the

28  supporting and opposing affidavits stating facts on which the liability or defense is applied."

1  *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 808-809.  The Court does not

2  weigh the evidence, it tests the evidence to determine if there is sufficient evidence to go forward.

3  　　　　CLARK bases its SLAPP motion solely on the notion that because they sued Dale, this

4  matter is subject to SLAPP analysis.  They then assume they have "absolute" litigation privilege

5  under Civ.C. Section 47(b) based on suing Dale.  Following this flawed line of thinking would

6  permit CLARK to ignore the rights of consumers who are not involved in any litigation with

7  CLARK, on nothing more than the last name of the person being harassed by CLARK is the same

8  as some third party CLARK has a judgment against.

9  　　　　The CLARK Special Motion to Strike portions of Plaintiff's complaint as a SLAPP,

10  attacks the second, third, fifth and sixth causes of action only.  The 5th and 6th Causes of Action

11  arise from federal claims, and are not subject to SLAPP analysis, however, the Declarations of

12  Mr. Rouse, Jr. And Ms. Linneman provide evidence of the emotional distress sufficient to defeat

13  the SLAPP Motion.  The Motion itself only argues that Plaintiff cannot prevail because CLARK

14  claims Litigation Privilege under Cal. Civil Code Section 47(b).  As is shown below, Civ.C.

15  Section 47(b) does not apply.  CLARK misapplies the law.  Mr. Rouse, Jr., presents admissible

16  evidence, which "demonstrates that the suit is viable."

17  **III.    Litigation Privilege Does Not Attach In This Matter**

18  　　　　The Defendants assert that Plaintiff cannot prevail on any one of the four challenged

19  causes of action, citing as their sole basis for this conclusion, "absolute immunity" under

20  California Civil Code Section 47(b), the litigation privilege statute.  The California State Supreme

21  Court does not agree with CLARK.  *Silberg v. Anderson* (1990) 50 Cal.3d 205, requires 4

22  elements to be satisfied before litigation privilege attaches.  Two of the four elements our absent

23  in this case.

24  　　　　Defendants cite *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, for the proposition that the

25  filing of lien is an act subject to litigation privilege.  A lien may be subject to privilege, but

26  privilege is not automatic.  Before litigation privilege attaches, the CA Supreme Court requires a

27  showing that all 4 elements related to the claim of privilege are met. *Silberg* Id.

28  　　　　Without a legitimate litigation purpose being served, and a reasonable and logical

1  connection to the litigation, there is no litigation privilege.  The Plaintiff in this matter has

2  absolutely no connection to any litigation between CLARK and Dale, therefore there is no

3  litigation privilege as to any cause of action in this matter.

4          Plaintiff does demonstrate the probability of prevailing on this FDCPA Complaint which

5  arises from violations of collection protection laws designed to protect consumers from collection

6  harassment.  NOL "1" proved Mr. Rouse, Jr. was not the debtor, the Declarations of Plaintiff and

7  Ms. Linneman demonstrate FDCPA violations before and after defendants suit against Dale.

8  Because there has never been any litigation related activity involving Plaintiff, no litigation

9  purpose is served by collection activity against a non-party, and there is no rational or logical

10 connection to the litigation between CLARK and Dale.  So under California law there is no

11 litigation privilege in this matter.

12         CLARK'S Motion at page 3, lines 24-26 acknowledge that Mr. Rouse, Jr.s' FDCPA

13 complaint does not allege there is an association between the Dale judgment (NOL 7) and the

14 collection efforts of CLARK against Mr. Rouse, Jr.  This admission by Defendant is fatal to their

15 motion.  In *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th at p. 1002, the Court held, " 'the act

16 underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of

17 action' must *itself* have been an act in furtherance of the right of petition or free speech." (*Id.* at

18 p. 1003.).  Defendants admit in their Motion that this is not the case.

19         Defendants raise the issue of litigation privilege with the State pendent claims, contained

20 in the 2nd and 3rd causes of action.  Without explanation they attempt to bootstrap the 5th and 6th

21 causes of action, for emotional distress arising from violations of the Federal Fair Debt Collection

22 Practices Act.  They cite Civ.C. Section 47(b) and rely on a series of cases such as *Blanchard v.*

23 *Direct TV* (2004) Cal.App. 4th 903, 921, claiming litigation privilege is absolute.

24         However, CLARK's own citation makes clear that the privilege is not absolute, and does

25 not apply in this matter.  The citation presented by CLARK's Motion at page 8, line 18, states the

26 litigation privilege attaches: **"assuming they (statements made in litigation) are logically**

27 **related to the litigation.** (Emphasis added).  There is no logical connection between CLARK's

28 suit against Dale, and anyone else with a similar last name, such as the Plaintiff in this matter.

1    Before litigation privilege arises to protect a party to litigation, all four criteria as defined

2  by the State's High Court must be met.  The last two criteria cannot be met by CLARK.  These

3  are: a statement or writing ... **(3) to achieve the objects of the litigation; and (4) that have some**

4  **connection or logical relation to the action.**" *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.

5    **The Third Test for Litigation Privilege.**

6    The object of the litigation filed by CLARK against Dale was to assert a claim against

7  Dale.  There is no litigation objective involving collection activities against Mr. Rouse, Jr.  The

8  placing a lien against property owned by Mr. Rouse, Jr., cannot be an act to achieve a litigation

9  objective with Dale, because Mr. Rouse, Jr., has no relationship to any litigation between CLARK

10  and Dale.  CLARK'S Motion at page 3, lines 24-26 acknowledge that Mr. Rouse, Jr.s' FDCPA

11  complaint does not allege there is an association between the Dale Rouse judgment and the

12  collection efforts of CLARK against Mr. Rouse, Jr.  The Federal and State FDCPA's expressly

13  seek to protect consumers against the type of collection conduct alleged in Plaintiff's complaint.

14    **The Fourth Test for Litigation Privilege.**

15    There is no credible means by which the defendants can claim there is some connection or

16  logical relation between Mr. Rouse, Jr., and their litigation against Dale, an action Mr. Rouse, Jr,

17  was not involved in (please see Declaration of Mr. Rouse, Jr.).  Defendants offer no cases which

18  support the notion that litigation against one individual provides unlimited or absolute litigation

19  privilege against anyone with a similar last name.  CLARK'S SLAPP Motion at page 3, lines 5-6

20  and at 10-11, admits that Mr. Rouse, Jr. was never a part of the litigation against Dale, nor was he

21  intended to be.  By their own admission in the CLARK SLAPP Motion, Mr. Rouse, Jr., has no

22  rational or logical connection with the litigation between WAP and Dale.

23    Therefore, there is no litigation privilege for the FDCPA violation of placing a lien on Mr.

24  Rouse, Jr.s's home, as there is no logical connection between the litigation between

25  CLARK/WAP and Mr. Rouse, Jr.

26    The filing of an abstract of judgment in this matter is neither privileged, or a written or

27  oral statement or writing made in connection with an issue under review by a . . . *Judicial*

28  *body...:* " as required by 425.16 (e)(1) or (e)(2).  The County Recorders office has no authority or

1  discretion to deny the recording of an abstract of judgment. Their role is purely ministerial in

2  nature. Recordation of an abstract of judgment merely creates a lien upon real property of the

3  judgment debtor (Code Civ. Proc., § 674); such recordation is not an execution upon a judgment.

4  (*Menges* v. *Robinson* (1933) 132 Cal.App. 647, 652 [23 P.2d 526]; *Laubisch* v. *Roberdo* (1954)

5  43 Cal.2d 702, 707 [277 P.2d 9].) A recent High Court ruling regarding liens does not alter the 4

6  requirements above must be met.

7         However, using the lien as a device to collect against Plaintiff is violation of the FDCPA,

8  where as here, Mr. Rouse, Jr., had demonstrated with NOL Exhibit "1" that he was not Dale.

9  **III.**    **The Fair Debt Collection Practices Acts**

10         The Federal Fair Debt Collection Practices Act is located at 15 U.S.C. 1692. Subsection

11  (e) States: "**Purposes** - It is the purpose of this subchapter to eliminate abusive debt collection

12  practices by debt collectors, to insure that those debt collectors who refrain from using abusive

13  debt collection practices are not competitively disadvantaged, and to promote consistent State

14  action to protect consumers against debt collection abuses. The Act permits States to enact

15  consumer protection statutes, which mirror or expand the scope of protection for consumers, but

16  prohibits a restriction of the scope of the Federal Act. 15 U.S.C. 1692n. Therefore, a restriction

17  on the class of collectors covered by FDCPA statutes is preempted by the Federal Act.

18         The California Fair Debt Collection Practices Act, located at Civ.C. Section 1788, states:

19  1788.1. "(2) There is need to ensure that debt collectors and debtors exercise their responsibilities

20  to one another with fairness, honesty and due regard for the rights of the other. **(b) It is the**

21  **purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or**

22  **practices in the collection of consumer debts. . ."** {Emphasis Added}

23         This case arises from a bill collection law firm who knowing placed a lien against property

24  owned by the Plaintiff, after being advised, with proof offered (NOL Exhibit "1"), that Mr. Rouse,

25  Jr., was not responsible in any manner for the alleged debt, as he was not Dale (see Declaration of

26  Mr. Rouse, Jr.). The Plaintiff does not share the name of the judgment debtor, nor any of the

27  aliases contained in a judgment (NOL 7) obtained by CLARK.

28         This lien was directed to the address of the home owned by Mr. Rouse, Jr. Please see

1   NOL "6".

2       The FDCPA seeks to "eliminate the recurring problem of debt collectors dunning the

3   wrong person . . ." *Swanson v. Southern Credit SeAv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)

4   Accordingly, the Act requires debt collectors to give debtors "debt validation notices." The debt

5   validation notices tell debtors that they have the right to dispute their debts within thirty days of

6   their initial contact with the debt collectors. 15 U.S.C. § 1692g (a) . Debt collectors must tell

7   debtors that if they dispute the debts, the debt collectors will obtain verification of the debt.

8       The FDCPA placed an affirmative duty on CLARK to effectively offer the opportunity to

9   challenge the validity of the alleged debt. This opportunity to challenge must be conveyed within

10   5 days of the initial contact with the alleged debtor. Once the alleged debtor challenges the

11   validity of the debt in writing, all collection activity against the individual must cease, until

12   verification is given. In the instant matter, CLARK did not give Mr. Rouse, Jr., the opportunity to

13   challenge the validity of the alleged debt ( a violation of 1692g(a). The CLARK Motion refers to

14   validation letters sent only to Dale. Defendants did not communication to Mr. Rouse, Jr.,within 5

15   days of initial contact, the right to demand verification. See Declaration of Mr. Rouse, Jr.

16       However, Mr. Rouse, Jr., acting on his own initiative demonstrated by NOL  "1" that he

17   was not the alleged debtor being sought by CLARK. Rather than cease collection efforts until

18   such time as CLARK verified the alleged debt as being Mr. Rouse, Jr.'s, CLARK continued to

19   harass Plaintiff with calls, later process servers, and filing a lien on Plaintiff's home.

20       At no time did CLARK ever send a letter to Martin Rouse, Jr., and offer him the

21   opportunity to challenge the validity of the debt (required by 15 U.S.C. S. 1692g (a)). Numerous

22   letters addressed to "Dale Rouse" were returned unopened to CLARK, please see declaration of

23   Jennifer Linneman, NOL Exhibit "5." Simply mailing a letter to the wrong person, at the wrong

24   address does not satisfy the requirements of the FDCPA.

25       In *Baker v. Citibank et.al.* 13 F.Supp. 2d 1037, *Baker* brought a summary judgment

26   motion against the collectors (California Financial) based on the misleading language of their

27   letter claiming to have attempted to contact her without success. The defendant, California

28   Financial argued that these statements were true because it had tried to contact Plaintiff, but it had

1  mistakenly directed its efforts to another person.   As the Honorable John S. Rhodes (Sr. Judge,

2  Retired) of this Court found, under the least sophisticated debtor standard which applies in

3  FDCPA actions ("[T] he impact of language alleged to violate [the FDCPA] is judged under the

4  'least sophisticated debtor' standard." *Swanson* 869 F.2d at 1225 (quoting *Baker v. S.C. Servs.*

5  *Corp.*, 677 F.2d 775, 778 (9th Cir. 1982)). This standard is objective, but "lower than simply

6  examining whether particular language would deceive or mislead a reasonable debtor.") .

7  Defendants had not contacted the correct person, therefore the statements were misleading and

8  summary judgment was granted.

9        No matter what the intent may have been with the letters to Dale, here the Notice

10  requirement was not met with respect to Mr. Rouse, Jr.  That defendants sent letters to the wrong

11  address, and the wrong person in an attempted to contact Dale is not sufficient to satisfy the

12  requirements of the FDCPA.  Mr. Rouse, Jr., proved he was not Dale ( NOL "1,").  A collection

13  had to stop. This highlights the malicious and callous disregard for Mr. Rouse, Jr.'s rights.

14        Concurrently with her Motion for Summary Judgment, *Baker* was forced to defend against

15  a similar motion by Citibank.  In their motion, Citibank sought to narrow the scope of consumer

16  protection statutes by claiming that because Ms. Baker was not a credit card holder (Citibank

17  acknowledged that they had delivered a credit card to an identity thief, not Ms. Baker), that Ms.

18  Baker was not a "consumer" who could avail herself of the protection of the Acts.

19        In response, Judge Rhodes wrote: "Citibank's narrow interpretation boils down to the

20  argument that if a consumer did not physically receive a card, the consumer is not a cardholder.

21  Citibank's interpretation would remove the protections of the SCCA from an entire group of

22  innocent consumers.  This would be so even though the credit cards bear their names, use their

23  social security numbers, and, if left unpaid, could damage their credit ratings.  This is an odd

24  interpretation indeed, and it circumvents the statute's obvious purpose of protecting consumers."

25        Judge Rhodes went on to deny the Citibank motion, adopting the following reasoning

26  "This principle further indicates that the SCCA applies to people who have had cards issued in

27  their names, even if they did not physically receive the cards. *American Airlines v. Remis Indus.*

28  *Inc.*, , 494 F.2d at 197 (holding that courts should not "arbitrarily conf in[e] the scope of the Truth

PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO SLAPP MOTION OF DEFENDANTS
RORY CLARK, THE LAW OFFICES OF RORY CLARK, AND JAN SHAPIRO
-20-

1  in Lending Act"  because doing so "would undermine Congress's purpose to afford a broader and
2  more meaningful protection to all who enter the credit card domain."

3         This matter is similar in nature.  CLARK claims that they filed suit against Dale for a
4  credit card dispute, but the evidence shows that they sought to collect against someone who had
5  no liability for the alleged debt of Dale.  Clearly the credit card issued to Dale is a consumer
6  service.  Acts Unfair to Consumers C.C. 1770 expressly prohibits. (a) The following unfair
7  methods of competition and unfair or deceptive acts or practices undertaken by any person in a
8  transaction intended to result or which results in . . . services to any consumer are unlawful:  (14)
9  Representing that a transaction confers or involves rights, remedies, or obligations which it does
10 not have or involve, or which are prohibited by law." The code does not require that all parties to
11 the transaction be involved.  It states it applies where an act is taken by someone who intended to
12 convey a service." Here the service conveyed was the issuance of a credit card, and the unlawful
13 act was collection activity against Plaintiff.

14        In the instant matter, the defendants have trampled all over Mr. Rouse, Jr.'s rights, and
15 now ask this Court to ignore their violations of the law, by narrowly interpreting the FDCPA to
16 preclude Mr. Rouse, Jr., from the protections of the Acts, simply because they filed a law suit
17 against some other person.

18                    **Violation of the STATE Fair Debt Collection Practices Act**

19        Civ.C. Sec. 1788.10. States in relevant part that debt collectors may not take any action,
20 that the natural consequence of would be to harass, or "A debt collector may not use unfair or
21 unconscionable means to collect or attempt to collect any debt. Without limiting the general
22 application of the foregoing, the following conduct is a violation of this section:

23        "The collection of any amount (including any interest, fee, charge, or expense incidental to
          the principal obligation) unless such amount is expressly authorized by the agreement
24        creating the debt or permitted by law."

25        Any amount CLARK attempted to collect from Mr. Rouse, Jr., after NOL "1" was mailed
26 to them is a per se violation of the Act.  The response "Well I guess we will get our money now"
27 knowing that Mr. Rouse, Jr. did not owe any money to CLARK or WAP, was an unconscionable
28 act of harassment.  Please see Declaration of Mr. Rouse, Jr.

1    C.C. 1788.17 adopts critical components of the Federal FDCPA, including the Notice of

2  right to validation of a debt.  It adopts the prohibitions incorporated into the State Act against

3  attempting to collect money that is not owed.  It adopts the 1692(f)(6) prohibition against

4  encumbering real property where there is no present right against the alleged debtor.   The lien

5  violated 1692(f)(6), and therefore violates the FDCP Acts.

6    The statement by CLARK about "getting our money now" was collection after Notice by

7  Plaintiff, without verification of the debt.  After being advised that the lien was improper, and was

8  an encumbrance barring Mr. Rouse, Jr. from refinancing his property, there was no privileged

9  under C.C. 47(b).  There is no litigation purpose served as Plaintiff was not a party to the

10 litigation relied on by CLARK, and there no connection or logical reason for attempts to collect

11 money not owed by Mr. Rouse, Jr.  This comment however is a per se violation of the Act, and

12 the malice and greed by this collector, whose only goal was to take money from someone who had

13 no liability for the alleged debt.

14    California law provides a remedy for a homeowner who has a lien placed on his property

15 by mistake.  C.C.P. 697.410. (a) If a recorded abstract of a money judgment or certified copy of a

16 money judgment appears to create a judgment lien on real property of a person who is not the

17 judgment debtor because the name of the property owner is the same as or similar to that of the

18 judgment debtor, the erroneously identified property owner may deliver to the judgment creditor a

19 written demand for a recordable document releasing the lien. The demand shall be accompanied

20 by proof to the satisfaction of the judgment creditor that the property owner is not the judgment

21 debtor and that the property is not subject to enforcement of the judgment against the judgment

22 debtor. (b) Within 15 days after receipt of the property owner's demand and proof satisfactory to

23 the judgment creditor that the property owner is not the judgment debtor and that the property is

24 not subject to enforcement of the judgment, the judgment creditor shall deliver to the property

25 owner a recordable document releasing the lien on the property of such owner. . . (C) If the

26 judgment creditor does not deliver a recordable document pursuant to subdivision (b). . . Subpart

27 (e) The damages provided by this section are not in derogation of any other damages or penalties

28 to which an aggrieved person may be entitled by law.

1    Prior to the placement of the lien by CLARK on Mr. Rouse, Jr.'s home, this Plaintiff had

2  submitted proof in the form of a driver's license and his social security card demonstrating

3  conclusively that he was not the alleged debtor.  CLARK placed the lien without any legal basis to

4  do so, and as of the date of Mr. Rouse, Jr.'s Declaration (NOL "2") CLARK has not served on Mr.

5  Rouse, Jr., a Notice that the lien has been removed, or provided signed documents permitting

6  Plaintiff to submit the release to the County Recorder of San Diego (NOL "2").

7    Because CLARK did not stop collection activity against Mr. Rouse, Jr., when the alleged

8  debt was disputed, encumbered Mr. Rouse, Jr.'s home after he provided written notice, with

9  identification that he was not the alleged debtor, and harassed or otherwise violated the Acts by

10  stating they were going to be paid when there was no debt owed, CLARK has violated the Acts.

11                                         **IV.**
                                    **CONCLUSION**

12

13    As shown by NOL Exhibits 1 through 3, the FDCPA violations began against Mr. Rouse,

14  Jr. in January or February of 2005.  As demonstrated by Plaintiff's NOL Exhibits "3" the 585

15  Declaration as applied to Dale Rouse; Exhibit "4" the Summons and Complaint naming Dale;

16  Exhibit "6" the Abstract of Judgment against Dale; and Exhibit "7" the Judgment against Dale,

17  the litigation relied on as the basis for SLAPP analysis, and by default the litigation privilege

18  claimed by defendants is only between defendants and Dale Rouse.

19    Defendants admit that Mr. Rouse, Jr., was never involved in, nor was he intended to be

20  involved in any litigation between defendants and Dale.  None of the aliases were Martin Rouse,

21  Jr.  There is not one scintilla of evidence that suggests that any litigation purpose is served by

22  defendants FDCPA violations directed at Mr. Rouse, Jr. There is not one scintilla of evidence that

23  demonstrates that this Plaintiff, Martin Rouse, Jr., had "some connection or logical relation to the

24  action" in the litigation against Dale Rouse.  Therefore, there is no litigation privilege for

25  defendants in this matter.

26    The mere fact that there is a similarity in last names between Martin Rouse, Jr., and Dale

27  does not provide a connection or a logical relationship to CLARK in their litigation against

28  anyone else.  Therefore no litigation privilege attaches.  If the CLARK premise were to be

**PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO SLAPP MOTION OF DEFENDANTS**
**RORY CLARK, THE LAW OFFICES OF RORY CLARK, AND JAN SHAPIRO**

1  adopted, any judgment creditor could at any time, merely rely on the telephone directory to locate

2  an individual with the same last name as a judgment debtor, and place a lien on property owned

3  by the individual with no connection to the litigation.  This would leave a property owner

4  vulnerable to any judgment creditor who violates the FDCPA, who chooses to act against

5  someone that has no logical connection to any litigation between the creditor and the actual

6  judgment debtor.

7        As was shown above, the SLAPP statute does not apply in this matter.  However, even if

8  this Court reviewed this matter under the SLAPP statute, Plaintiff demonstrated a probability of

9  prevailing based on the Declarations of Mr. Rouse, Jr., Ms. Linneman, and the admissible

10  evidence offered as Exhibits.

11        For the reasons set forth above, Plaintiff respectfully requests this Court deny the Special

12  Motion to Strike portions of the Plaintiff's Complaint, and find that this SLAPP Motion was

13  frivolous and brought for the improper purpose of delay.

14  DATED:     April 25, 2006

15                                    **Respectfully Submitted**

16                  **LAW OFFICES OF M. DAVID MEAGHER**

17

18                By:                                   
                                          M. DAVID MEAGHER, Esq.

19                             Attorneys for Plaintiff and Opposing Party
                                        MARTIN ROUSE, JR.

20

21

22

23

24

25

26

27

28