FILED

06 SEP 26 AM 9: 15

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN J. ROUSE, JR., an individual,<br><br>                              Plaintiff,<br><br>     vs.<br><br>LAW OFFICES OF RORY CLARK, RORY CLARK, an individual, JAN SHAPIRO, an individual, and WORLDWIDE ASSET PURCHASING, a Limited Liability Company,<br><br>                              Defendants. | CASE NO. 06cv0006-LAB (RBB)<br><br>**ORDER DENYING DEFENDANTS' SPECIAL ANTI-SLAPP MOTIONS TO DISMISS SECOND, THIRD, FIFTH, AND SIXTH CAUSES OF ACTION**<br><br>[Dkt Nos.  5, 10] |

    This Fair Debt Collection Practices matter is before the court on the Special Motion To Strike by defendants Law Offices of Rory Clark, Rory Clark, and Jan Shapiro (collectively the "Clark Defendants") (Dkt No. 5) and the separate Motion To Strike by defendant Worldwide Asset Purchasing ("Worldwide") (Dkt No. 10).  Both motions rely on the California anti-SLAPP statute, CAL. CODE CIV. P. § 425.16, and each contends four of the six causes of action alleged in the Complaint must be dismissed as impermissible Strategic Litigation Against Public Participation

06cv0006

("SLAPP").[1]  Plaintiff Martin J. Rouse, Jr. ("Rouse") filed an Opposition to each motion, and the defendants filed a joint Reply to the Oppositions.  Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues presented appropriate for decision on the papers and without oral argument.  For the reasons discussed below, both anti-SLAPP motions are **DENIED**.

## I.       BACKGROUND

Preliminarily, the court notes all defendants are represented by the same counsel.  The four causes of action the anti-SLAPP motions address are alleged against "all defendants."  The Clark Defendants' Points and Authorities filed on February 2, 2006, is virtually identical to Worldwide's Points and Authorities filed March 3, 2006.  Similarly, Worldwide's Request For Judicial Notice in support of its motion identifies the same two items as the Clark Defendants' Request For Judicial Notice in support of their motion, but adds a recent California Supreme Court case as an additional exhibit.[2]  The court eliminates these redundancies by referring to Worldwide's Points and Authorities as setting forth the position of all defendants with respect to the relief sought.[3]

In ruling on a special motion to strike under the anti-SLAPP statute, the court accepts as true all evidence favorable to the plaintiff. Consumer Justice Center v. Trimedica International, Inc., 107 Cal.App.4th 595, 605 (2003). Worldwide retained Rory Clark, Esq. to pursue a debt Dale Martin Rouse, Sr. allegedly owed Worldwide. Mot. P&A 2:21-22. Dale Rouse is plaintiff Rouse's biological father from whom he has been estranged for about 20 years. Rouse Decl. ¶ 11. Rouse has never gone by the name "Dale Rouse" or any other of the "*aka*" names Defendants associated with the debtor. Id. ¶ 3. Rouse has never had a Bank of America credit card with the account number Worldwide and the Clark Defendants targeted for collection. Id. ¶ 4.

---

[1]   The claims not challenged in the anti-SLAPP motions are:  First Cause of Action for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*; and Fourth Cause of Action for Unfair Business Practices, CAL. BUS. & PROF. CODE § 17200.

[2]   Defendants' joint Supplemental Request For Judicial Notice filed May 15, 2006, identifies a proof of service filed in Worldwide Asset Purchasing, LLC v. Dale Rouse, Case No. IN04409, San Diego County Superior Court, North County Division, filed May 13, 2005, and a Release of Lien recorded in the San Diego County Recorder's Office on September 14, 2005, but did not attach them.  The Clark Declaration provides as Exhibits copies of a proof of service of summons and a letter dated August 30, 2004 Clark characterizes as a "prelitigation demand letter" advising "Dale Rouse" of his retention to pursue an account collection.

[3]   The court of course considers the Declarations and lodgements filed in support of each of the motions where there is not redundancy.

1    Rouse began receiving telephone calls at his residence in January or February 2005 from the
2    Clark law firm attempting to collect the debt, repeatedly accusing him of being Dale Rouse. Rouse
3    Decl. ¶ 5; Linneman Decl. ¶¶ 7, 8. At the same time, he also began to receive at his home address in
4    Escondido, where Rouse lives with his fiancé, Jennifer Linneman, letters from the Clark law offices
5    addressed to Dale Rouse. Rouse Decl. ¶¶ 2, 6. Ms. Linneman handled their incoming mail. Linneman
6    Decl. ¶ 2. She returned each letter addressed to Dale Rouse to the sender unopened, and circled the
7    name "Dale Rouse" with a notation on the envelopes no one by that name lived at their address. Id. ¶¶
8    3-6. Both Rouse and Ms. Linneman repeatedly advised the bill collectors when they called that he
9    was not Dale Rouse, Dale Rouse did not live at their house, and asked them to stop calling. Rouse
10   Decl. ¶ 8; Linneman Decl. ¶ 8. Rouse also informed them Ms. Linneman suffers from multiple
11   sclerosis and the repeated calls and letters to Dale Rouse were causing them both stress and distress.
12   Rouse Decl. ¶ 9; Linneman Decl. ¶19. He also told them of his estrangement from his father, "the
13   person they apparently wanted." Rouse Decl. ¶ 11. The Clark Defendants continued to place calls to
14   Rouse's house. Id. ¶ 10.

15    In early May 2005, two process servers appeared at Rouse's house, claiming Rouse was Dale
16   Rouse and that Ms. Linneman was Lorraine Rouse. Rouse Decl. ¶14; Linneman Decl. ¶ 9. The process
17   servers were "abusive."   Both Rouse and Ms. Linneman showed the process servers their drivers'
18   licenses to prove they were not Dale and Lorraine Rouse. Rouse Decl. ¶¶ 15-16; Linneman Decl. ¶¶
19   10-11. Rouse ordered the men off his property. Over the next few days, Ms. Linneman saw them on
20   the private road leading to the Rouse residence. Linneman Decl. ¶¶ 12-14. Rouse and Ms. Linneman
21   found in their mailbox when they returned from a weekend trip to Arizona a summons and complaint
22   naming Dale Rouse as the defendant. Rouse Decl. ¶ 17; Linneman Decl. ¶¶ 16-17; see Rouse Exh.
23   4 (April 28, 2005 Summons and Complaint For Money, captioned Worldwide Asset Purchasing, LLC
24   v. Dale Rouse aka Dale M. Rouse aka Martin D. Rouse aka Dale M. Rouse, Sr.). On May 9, 2005,
25   Rouse called the Clark law firm and spoke with a woman who identified herself as Jan Shapiro.
26   Despite several months of telling the firm that he was not Dale Rouse, and despite having shown the
27   process servers his drivers' license, he was told he should "prove that I wasn't Dale Rouse." Rouse
28   Decl. ¶¶ 19-21. On May 12, 2005, he mailed a letter to the firm to the attention of "Jan," restating his

denials he was Dale Rouse and providing copies of his drivers' license, social security card, and the summons that was left in his mailbox for Dale Rouse. He asked that the "mistake" be clarified and the harassment be stopped. Rouse Decl. ¶¶ 22-24; Rouse Exh. 1.

Defendants obtained a default judgment against Dale Rouse. In August 2005, Rouse received a letter from the San Diego County Recorder's Office advising him that a lien in the form of the abstract of judgment had been recorded against his property. Rouse Decl. ¶ 25, Exh. 5. The name on the lien document was "Dale Rouse" and the social security number on the lien was not Rouse's, but the address the Clark firm used in the abstract of judgment encumbered his residence. Id. ¶¶ 26-28. The placement of that lien caused Rouse to lose a refinancing deal he was negotiating on his house and to receive a bill for $1,840 in costs incurred in the failed refinancing effort. Id. ¶¶ 29-31. He called the Clark law offices and let them know the lien was causing the loss of his refinancing. He received the response: "Well I guess we'll get our money." Id. ¶¶ 32-33.

This lawsuit, filed January 3, 2006, followed. Rouse alleges six causes of action: First Cause of Action for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.; Second Cause of Action for violations of CAL. CIV. CODE §§1770, et seq., the California Consumer Legal Remedies Act; Third Cause of Action for violations Of CAL. CIV. CODE §§1788, et seq., the California Fair Debt Collections Practices Act; Fourth Cause of Action for unfair business practices under CAL. BUS. & PROF. CODE § 17200; Fifth Cause of Action for intentional infliction of emotional distress; and Sixth Cause of Action for negligent infliction of emotional distress.

Rouse declares the reason he filed this action "is due to [Defendants'] extreme collection abuses that began in January or February of 2005," and due to the "ongoing harassment" which has caused him emotional distress and interference with his home life, work, economic well-being and sleep. Id. ¶¶ 41-42. He declares that prior to filing this action, he had not been a party to any form of litigation involving either the Clark law firm or Worldwide, he has never owed Worldwide any money, and he was not a party to any aspect of the Clark law firm's suit against Dale Rouse nor involved in that suit in any other way, other than receiving a copy of the summons and complaint and the recordation of a lien against his property in the form of an abstract of the default judgment defendants obtained against Dale Rouse. Rouse Decl. ¶¶ 35-38. As of the date of his April 2006 Declaration, he stated he

1    had received no documents from the County Recorder's Office indicating the lien had been expunged.

2    Id. ¶ 39. He had only received "an unsigned, undated document from Clark called a release of

3    judgment lien, but there are no file stamps on this document, and nothing to indicate the County

4    Recorder's Office has expunged this lien" and, because it is unsigned, he cannot record the document

5    himself for that purpose. Id. ¶ 40.

6         Defendants argue "Mr. Martin J. Rouse literally makes a federal case of a claimed mistake of

7    identity -- a mistake that was apparently made by a county recorders office (if one was made at all)."

8    Mot. P&A 2:17-18. They contend "the mistake could have been resolved if plaintiff Martin Rouse had

9    followed the directions on the initial demand letter and disputed the debt within the first 30 days."[4]

10   Id. 2:18-20. They move under California's anti-SLAPP statute, CAL. CODE CIV. P. § 425.16 ("Section

11   425.16"), to dismiss the second, third, fifth, and sixth causes of action. They argue Rouse's claims are

12   subject to striking because they are based on the prosecution of debt collection litigation they initiated

13   against Dale Rouse under his various alias and their subsequent efforts to enforce that judgment.

14   Although Defendants construe Rouse's action as arising out of the collection lawsuit, they

15   acknowledge: "Plaintiff Martin J. Rouse did not respond to the lawsuit and did not appear in court.

16   Of course, since he was not named in the litigation, there appears to be no reason why he should have.

17   A default judgment was taken against 'Dale Rouse *aka* Dale M. Rouse *aka* Martin D. Rouse *aka* Dale

18   M. Rouse, Sr.'" Mot. P&A 3:4-13. Defendants admit they filed the abstract of judgment and that

19   Rouse "contacted attorney Rory Clark's offices to allege that the abstract was preventing a refinance

20   of his real property." Id. 3:14-21. They trivialize the effects of that chain of events, contending their

21   actions "would not have affected any real property owned by plaintiff Martin J. Rouse," because the

22   judgment and the abstract of judgment record a social security number different from Rouse's social

23   security number. Ignoring their role in causing the encumbrance actually to be placed on Rouse's

24   residence, as pled in the Complaint and substantiated through Rouse's Declaration, Defendants state:

25              To accommodate Plaintiff Rouse, Attorney Clark filed a release of lien
                with the San Diego County as to Mr. Martin J. Rouse's property since
26              this property was not held in the name of the judgment debtor and

27   _____

28   [4] Despite Defendants' argument Rouse should have immediately responded to the debt collection
     notice the Clark Defendants sent to his residence addressed to "Dale Rouse," Ms. Linneman declares all such
     letters were returned to sender unopened.

therefore, should not have been liened in the first instance. There is no allegation in the Complaint that the judgment against the judgment debtor, Dale Rouse, Sr. was ever associated with Plaintiff Rouse's property.

Mot. P&A 3:21-26; *but see* Compl. ¶¶ 22-24.

Defendants attempt to reinforce their contention Rouse's claims in this action arise out of protected "litigation activity and enforcement proceedings," despite Rouse's evidence Rouse to the contrary: "Plaintiff Rouse has not provided Attorney Clark or his client, WAP, with any proof that he is who he says he is, and yet Attorney Clark bent over backwards to resolve plaintiff Rouse's concerns with the alleged lien," contending on that basis "Plaintiff Rouse's claims are baseless, and fail as a matter of law," invoking the anti-SLAPP statute.    Mot. P&A 3:27-4:1.    In contrast, Rouse argues: "This case is about repeated and egregious violations of the Fair Debt Collection Practices Act, strict liability statutes, and the emotional distress caused by collectors who knew that Mr. Rouse, Jr., had no liability for the alleged debts of a person named Dale," claims that fall outside the scope of anti-SLAPP legislation. Reply 6:20-22.

## II.    DISCUSSION

### A.    Legal Standards

"The anti-SLAPP statute was enacted in 1992 for the purpose of providing an efficient procedural mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims 'arising from any act' of the defendant 'in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." Martinez v. Metabolife International, Inc., 113 Cal.App.4th 181, 186 (2004), *quoting* CAL. CODE CIV. P. § 425.16(b)(1) (denying corporation's anti-SLAPP motion to strike the complaint; although commercial speech can qualify for First Amendment protection and, thus, potentially for anti-SLAPP protection, plaintiff's claims arose from unprotected conduct).    The statute arose "from the Legislature's recognition that SLAPP suit plaintiffs are not seeking to succeed on the merits, but to use the legal system to chill the defendant's first amendment" rights. Integrated Healthcare Holdings, Inc. v. Fitzgibbons, 140 Cal.App.4th 515, 522 (2006). Section 425.16 provides that a cause of action in such circumstances "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Daimler-

- 6 -

1   Chrysler Motors Co. v. Lew, -- Cal.App.4th --, 48 Cal.Rptr. 3d 233, 237 (2006), *quoting* Section

2   425.16(b)(1). The court accordingly engages in a two-step process in deciding an anti-SLAPP motion:

3               First, the court decides whether the defendant has made a threshold
            showing that the challenged cause of action is one arising from
4           protected activity. . . . If the court finds that such a showing has been
            made, it then determines whether the plaintiff has demonstrated a
5           probability of prevailing on the claim.

6   Equilon Enterprises v. Consumer Cause, Inc., 29 Cal.4th 53, 67 (2002).

7           Only if the defendant initially establishes the suit is within the class of suits subject to Section

8   425.16 need the court reach the second step. "In deciding whether the initial 'arising from' requirement

9   is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts [on]

10  which the liability or defense is based." Navellier v. Sletten, 29 Cal.4th 82, 89 (2002) (citation

11  omitted). The "anti-SLAPP statute's definitional focus is not on the form of the plaintiff's cause of

12  action but, rather, the defendants *activity* that gives rise to his or her asserted liability -- and whether

13  that activity constitutes protected speech or petitioning." Id. at 92. Section 425.16 specifies four

14  categories of conduct that qualify for anti-SLAPP protection:

15              As used in this section, "act in furtherance of a person's right of
            petition or free speech under the United States or California
16          Constitution in connection with a public issue" includes:  (1) any
            written or oral statement or writing made before a legislative,
17          executive, or judicial proceeding, or in any other official proceeding
            authorized by law; (2) any written or oral statement or writing made in
18          connection with an issue under consideration or review by a legislative,
            executive, or judicial body, or any other official proceeding authorized
19          by law; (3) any written or oral statement made in a place open to the
            public or a public forum in connection with an issue of public interest;
20          (4) or any other conduct in furtherance of the exercise of the
            constitutional right of petition or the constitutional right of free speech
21          in connection with a public issue or an issue of public interest.[5]

22

23          [5] "When the defendant's alleged acts fall under the first two prongs of section 425.16, subdivision (e)
    (speech or petitioning before a legislative, executive, judicial, or other official proceeding, or statements made
24  in connection with an issue under review or consideration by an official body), the defendant is not required
    to independently demonstrate that the matter is a 'public issue' within the statute's meaning." Navarro v. IHOP
25  Properties, Inc., 134 Cal.App.4th 834, 842-43 (2006). "The stated intent of the anti-SLAPP statute is 'to
    encourage continued participation in matters of public significance.' (§ 425.16, subd. (a).)  No logical
26  interpretation of this statement suggests that 'matters of public significance' include specific . . . statements
    about a particular product [or transaction], absent facts which make the product [or transaction] a matter of
27  genuine public interest. . . ."Trimedica, 107 Cal.App.4th at 602.  In any event, a "public interest" analysis is
    implicated only when the conduct alleged falls within clauses (3) and (4) of Section 425.16(e), whereas these
28  Defendants invoke only the litigation protection of clause (1). See A.F. Brown Electrical Contractor, Inc. v.
    Rhino Electric Supply, Inc., 137 Cal.App.4th 1118, 1129 (2006). The court notes that although debt collection

1   Cal. Code Civ. P. § 425.16(e).

2         Defendants here rely for their alleged entitlement to anti-SLAPP protection on the litigation

3   privilege embodied in the first of the four codified categories of protected activity.  In order to meet

4   their threshold burden, they must demonstrate Rouse's challenged claims are *based on* conduct in the

5   exercise of Defendants' protected rights. <u>Computer Xpress, Inc. v. Jackson</u>, 93 Cal.App.4th 993, 1001-

6   02 (2001); *see* <u>City of Cotati v. Cashman</u>, 29 Cal.4th 69, 78 (2002) ("[t]hat a cause of action may have

7   been triggered by protected activity does not entail that it is one arising from such").  "[T]he statutory

8   phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's

9   cause of action must *itself* have been an act in furtherance of the right of petition or free speech." <u>City</u>

10  <u>of Cotati</u>, 29 Cal.4th at 78; *see also* <u>Equilon</u>, 29 Cal.4th at 67-68 (in the anti-SLAPP context, the

11  critical point is whether plaintiff's cause of action itself was *based on* an act in furtherance of

12  defendant's right of petition or free speech).  That burden is met if the defendant demonstrates "the act

13  underlying plaintiff's case fits one of the categories spelled out in section 425.16, subdivision (e). . . ."

14  <u>Braun v. Chronicle Publishing Co.</u>, 52 Cal.App.4th 1036, 1043 (1997).

15      **B.**   **<u>Defendants Do Not Carry Their Burden At Step One Of The Anti-SLAPP</u>**

16            **<u>Analysis</u>**

17        Defendants' motions can be resolved at the first step of the anti-SLAPP analysis.  When

18  defendants fail to meet their initial burden, the court need not consider whether plaintiff has

    demonstrated a probability of success before denying a special motion to strike. <u>A.F. Brown Electrical</u>

19  <u>Contractor, Inc. v. Rhino Electric Supply, Inc.</u>, 137 Cal.App.4th 1118, 1129 (2006); *see* <u>Navellier</u>, 29

20  Cal.4th at 89 ("Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute -- *i.e.*, that

21  arises from protected speech or petitioning *and* lacks even minimal merit -- is a SLAPP, subject to

22  being stricken under the statute"); <u>Martinez</u>, 113 Cal.App.4th at 193 (unless defendants carry their

23  burden at the first step of the anti-SLAPP analysis to show the suit arises from acts in furtherance of

24  their protected activity, the court must deny the motion).

25

26  _____

27  practices, issues of privacy, and personal identity protections are matters of considerable public interest these days, the interactions between Rouse and Defendants cannot reasonably be construed other than as involving a particular private dispute.  The thrust of this lawsuit is whether Defendants engaged in debt collection

28  practices in pursuing Rouse for the payment of a debt purportedly owed by someone else that violate federal and state consumer protection laws.

1       The court finds Rouse's action does not "satisf[y] the initial statutory requirement that to

2   constitute a SLAPP the cause of action must arise from the defendant's activity in the furtherance of

3   free speech or petitioning rights." <u>Navellier</u>, 29 Cal.4th at 89. The court finds the communications

4   giving rise to this lawsuit occurred between private parties and relate to a transaction affecting only

5   the actual debtor, the tactics Defendants used to pursue collection of a particular debt, and Rouse, the

6   person mistakenly targeted. The debt collection litigation Defendants pursued did not involve Rouse

7   nor, apparently, did Defendants ever have grounds to invoke legal process against him or his property

8   for the subject matter of their lawsuit. Moreover, Defendants' actions are not absolutely privileged as

9   a matter of law unless they demonstrate "they made the challenged communications in connection with

10   potential litigation that was given serious consideration and contemplated in good faith." <u>A.F.Brown</u>

11   <u>Electrical Contractor</u>, 137 Cal.App. 4th at1123, 1128, 1129 (the "threat of potential legal action is

12   insufficient. . . to demonstrate a lawsuit was under serious consideration," and an action such as

13   submitting a writing to a government agency can be a "purely business type event or transaction and

14   is not the type of protected activity contemplated under" section 425.16(e), such as issuing stop

15   notices, informing collection agency that plaintiff owed the defendants money, and making a

16   derogatory credit report). The court is persuaded that the recording of a lien against property based

17   on a default judgment tendered to the County Recorder's Office is a ministerial function falling outside

18   the "any other official proceeding authorized by law"contemplated in Section 425.16(e). Defendants

19   thus do not substantiate any First Amendment speech or petition right causing an anti-SLAPP privilege

20   to attach to the conduct Rouse alleges in his Complaint.[6]

21       Merely because legal action is filed after protected activity took place did not mean it arose

22   from that activity. <u>City of Cotati</u>, 29 Cal.4th at 70. Defendants' litigation against Dale Rouse occurred

23

_____

24      [6]  Defendants urge the court to rely on <u>Rusheen v. Cohen</u>, 37 Cal.4th 1048 (2006) as supportive of their litigation privilege arguments. The case is distinguishable. The question presented there, associated with

25   deciding an anti-SLAPP motion, was: "Are actions taken to collect a judgment, such as obtaining a writ of execution and **levying on a judgment debtor's property**, protected by the litigation privilege of Civil Code

26   section 47, subdivision (b), as 'communication[s]' in the course of a judicial proceeding?" <u>Id.</u> at 1052 (emphasis added). That court held "that where the cause of action is based on a communicative act, the

27   litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act." <u>Id.</u> However, such an inquiry is inapposite here, for just the most obvious reasons Rouse

28   is not the "judgment debtor," and Defendants acknowledge a mistake in the placement of a lien on Rouse's property to secure their default judgment against Dale Rouse, so that any encumbrance on the strength of that judgment was without legal foundation.

                06cv0006

1    before the filing of this lawsuit. However, Rouse was not a party to the litigation Defendants invoke

2    to support their anti-SLAPP theory. The default judgment they obtained and recorded is not

3    enforceable against Rouse. The core conduct and gravamen or principle thrust of the plaintiff's cause

4    of action determines whether the anti-SLAPP statute applies. City of Cotati, 29 Cal.4th 69. Rouse's

5    claims arise from the manner of Defendants' private debt collection efforts. "[A] defendant in an

6    ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint

7    contains some references to speech or petitioning activity by the defendant." Martinez, 113

8    Cal.App.4th at 188. The court finds on the record presented, construed in favor of the plaintiff, that

9    Rouse's claims do not implicate Defendants' right of petition. The Complaint and briefing in

10   connection with the anti-SLAPP motions raise no suspicion he pursues his claims other than to

11   succeed on the merits. *See* Integrated Healthcare, 140 Cal.App.4th at 522.

12   **III.    CONCLUSION AND ORDER**

13           For the foregoing reasons, **IT IS HEREBY ORDERED** Defendants' anti-SLAPP special

14   motions to dismiss are both **DENIED**.

15           **IT IS SO ORDERED**.

16   DATED: _____9.25.06_____                    _Larry A. Burns_

17                                               **HONORABLE LARRY ALAN BURNS**
                                                 United States District Judge
18
     cc:    MAGISTRATE JUDGE RUBEN B. BROOKS
19           ALL COUNSEL OF RECORD

20

21

22

23

24

25

26

27

28